[Civ. No. 12403.   First Dist., Div. One.   June 30, 1943.]

HENRY EISENMENGER, Appellant, v. JOHN EISEN-MENGER et al., Respondents.

E. B. Mering for Appellant.

King & King for Respondents.

PETERS, P. J.—The plaintiff, Henry Eisenmenger, and the defendants, John and William Eisenmenger, are brothers. The action was brought by Henry to have it determined that defendants hold title in trust for him to a 76 acre ranch in Napa County. William, who resides in Alaska, defaulted. The complaint alleges that John originally owned the property; that prior to October 14, 1930, John deeded the property to William to secure a $100 loan; that on October 14, 1930, it was agreed between Henry and John that "in consideration of said Henry Eisenmenger having lived for several years upon said property and having during all of said time taken care of their mother and stepfather, and also in consideration of Henry Eisenmenger having paid to said John Eisenmenger

the sum of —————— and also in consideration of the promise of said Henry Eisenmenger that he would continue in the future to take care of said persons as he had done in the past that said John Eisenmenger would convey all of said property to said Henry Eisenmenger, in consideration of the matters above set forth, and also the promise of said. Henry Eisenmenger to pay the funeral expenses of said parents.'' The alleged agreement is attached to the complaint as an exhibit. The complaint also alleged that Henry prepared deeds to be executed by William and forwarded the same to him together with an offer to execute a mortgage in favor of William to secure John's debt for which William then held the deeds as security; that William failed and refused to execute the deeds; that defendants have been in' possession since that date and have removed certain buildings from the premises. Plaintiff avers full performance on his part of the terms of the alleged agreement between him and John. He prays for a decree that defendants hold the property in trust for him, and for damages for the use and occupation.

As disclosed by plaintiff's·complaint, it is his theory that by the agreement of 1930 between him and John, William was to receive a mortgage from Henry in lieu of holding the deeds as security for John's debt to William. William was not a party to the agreement, and, it is alleged, refused to convey to Henry. It will be noted that, as pleaded, the conveyance was to be made in the future in return for certain considerations to be furnished by Henry, some of which were past and some future considerations.

John filed an answer and cross-complaint. He averred that John paid William the amount owing to him and that on July 21, 1931, William conveyed the property to John. This deed was not recorded until after this action was commenced. John also averred that Henry failed to perform the agreement; that he failed to support the mother and stepfather; refused to pay the burial expenses of the mother, except for the sum of $20; failed to pay the doctor bills of the mother, except for $20; failed to pay the taxes; and that he, John, fully performed. He also pleaded the statute of limitations, and title by adverse possession, alleging possession and payment of taxes for the requisite period.

The trial court found that plaintiff had no interest in the property; that the agreement alleged in the complaint ''was never consummated by any of the parties thereto and that

no trust involving said property was ever created in favor of the plaintiff herein''; that plaintiff's cause of action was barred by the statute of limitations; and that, in any event, defendant had title by adverse possession.

Aside from certain technical contentions which are without merit, plaintiff's appeal is predicated upon the contention that the findings are unsupported.

The alleged agreement of October 14, 1930, is pleaded as an exhibit to the complaint. It is in the form of a letter addressed to William, in Alaska, and was admittedly signed by John. In that letter John requests William to execute the deeds which Henry had sent to William that morning, and states that Henry will give William a note and mortgage for the amount William had advanced to John. The letter reads in part: ''I am in the office of C. M. Dawson, the attorney, handling the property situation, together with Henry, mother and my stepfather, and we have come to an agreement whereby Henry is to take over my interest in the property according to an agreement we had a year ago, Henry having paid the money to me as agreed and if you will sign the deeds of conveyance which Henry has mailed to you this morning it will fully straighten out the family differences . . .

''We have come to an agreement relating to taking care of the old folks and I have agreed to give mother $10.00 a month and Henry will take care of the old folks for the balance of their lives, paying all expenses during their lives and funeral costs.''

Henry signed a postscript to the letter stating: ''This is a satisfactory arrangement with me and full agreed upon by my brother John and I, and I will see that you get the mortgage as soon as the matter is straightened out. As soon as possible I will pay the amount due you on the mortgage.''

It is an admitted fact that William never executed the deeds to Henry. It is also admitted that Henry never paid William the debt owed by John. The fact that William deeded the property to John on July 21, 1931, supports an inference that John paid this debt. The evidence offered by plaintiff on the other issues involved was most unsatisfactory and incomplete. On the issue of whether prior and subsequent to 1930 Henry had supported his mother and stepfather, the evidence is in conflict. There is evidence that he did not do so, although there is considerable evidence the other way.

Such conflicts were for the trial court. There is evidence that John paid the last illness expenses for the mother, and that John and other brothers paid her funeral expenses. Henry testified he paid these bills in part but admitted he did not pay them *in toto*. It is obvious, therefore, that the trial court was justified in finding that the agreement of October 14, 1930, was never consummated—i. e., never performed by plaintiff.

█ As already pointed out, the complaint is squarely based on the letter of October 14, 1930. That letter refers to some agreement having been made between John and Henry the preceding year whereby Henry was to take over John's interest in the property. Henry testified that the 1929 agreement was in writing; that he had placed it in an old trunk; that it had been stolen from the trunk; and that he had a witness in the courtroom who saw it stolen. That witness was never produced. No satisfactory evidence was given as to the contents of this earlier agreement. It was apparently the theory of Henry that, prior to 1929, he had advanced $1,500 to help pay the expenses of the old folks, and that this was an obligation of John's. Apparently, although this is not entirely clear, this is the sum referred to in the letter of October 14, 1930, as having been paid by Henry. The complaint, in setting forth this transaction, leaves this sum blank. The record is entirely silent as to whether this was the total sum to be paid by Henry, or whether the 1929 agreement contained other covenants to be performed by Henry. The very fact that the 1930 agreement was entered into implies that the 1929 agreement was abrogated. This inference is supported by the fact that in the 1930 transaction Henry assumed certain executory obligations. If the 1929 agreement was complete, the property was his without further obligation on his part. This was apparently the theory adopted by Henry on the trial. At that time, apparently in an attempt to excuse his failure to perform some of the executory obligations of the 1930 agreement, Henry took the position that he was relying on the 1929 agreement. During his examination, the court asked Henry: "So you do not claim this agreement [that of October 14, 1930] as the agreement whereby you ought to have the property because you claim you already bought it before? A. I already bought it, but that [the 1930 agreement] just shows I did buy it a year ago. It says, 'According to an

agreement we had a year ago.' It is still on there. That makes it '29.''

While plaintiff's testimony, which was supported by that of several witnesses, was that prior and subsequent to 1930 he had assumed almost the sole burden of supporting the mother and stepfather, and that, until 1931 or 1932, he had operated the ranch and at his own expense constructed several buildings thereon, the evidence is not in such a state that it requires a holding that, as a matter of law, a binding agreement, whether of 1929 or 1930, remained in effect. The burden rested on the plaintiff to show the terms of the contract forming the basis of his claim, and to show that that agreement, insofar as it was executory, had been performed by him. The agreement was executory as to John insofar as it required a future transfer by John or William to Henry. Unless plaintiff fully performed his part of the agreement he is in no position to demand a transfer. The terms of the 1929 agreement were not shown. Hence, it cannot be held that under that agreement there was an executed consideration. The complaint alleges, and the 1930 agreement recites, that, as part of the consideration for the transfer, Henry was to take care of the mother and stepfather for the balance of their lives and was to pay their funeral expenses. The evidence is in conflict on whether he performed these executory obligations.

Moreover, the agreement of 1930 contemplated a deed from William to Henry. In view of what has already been stated, it is clear that the evidence is too uncertain to support a finding, much less compel one, that a binding obligation to transfer the property continued when the transaction was not consummated as contemplated. Furthermore, there is no evidence that Henry ever paid William, which would indicate either that the agreement was abrogated when William failed to cooperate, or that if it continued in effect between Henry and John, that Henry failed to perform.

■ The trial court also found that plaintiff's action was barred by the statute of limitations. This finding is also supported. If a trust was created in 1930, and if John thus held the property subject to an enforceable claim of Henry, the statute would commence to run against enforcement of such claim from the date of repudiation by John. The evidence shows that the trust agreement, if any existed, was repudiated

by John shortly after 1930. The mother died in May, 1931. Shortly thereafter, Henry was ordered off the premises by the Harts who were acting as the agents for John. In 1934— six years before the present action was commenced—Henry, in a prior action, sued to enforce the trust because of an alleged repudiation by John. The parties here stipulated that the judgment of nonsuit in that case was not res judicata, but the fact that an action was then commenced is some evidence that there had been a repudiation of the trust, if any existed, prior to 1934.

█ The court also found that, in any event, John had title by adverse possession, finding, in this connection, that John had been in actual, adverse and exclusive possession of the property for more than five years next preceding the action and had paid the taxes thereon. The land is located in a remote portion of Napa County. John purchased it in 1923 and admittedly Henry operated it until 1931. John at no time lived on the property. He was a motorman in San Francisco until 1937 when he was sentenced to McNeil Island Federal Prison for a narcotic offense. He served twenty-seven months, and since his release has resided near the property in question. The evidence shows that Chris Hart (a brother of the two litigants, although he uses a different name) and his wife own a ranch adjoining the ranch here involved. Since sometime in 1931 or 1932 the Harts, except for a short period when John leased the premises to a tenant, have been in possession of the ranch as agents of John. John paid the taxes up to 1934 or 1935 and since that time the taxes have been paid by the Harts. John has given the Harts his note secured by a deed of trust on the property for all sums expended by them on his behalf. Thus, although John was not in personal possession, he has been in open and actual and adverse possession of the property through the agency of the Harts for more than five years preceding the action. Taxes having been paid, and a repudiation of the trust having occurred more than six years before the filing of the action, John now has title by adverse possession.

The judgment is that John owns the property free of any claim of Henry. From what has been said, the trial court's holding was justified either on the theory that the agreement upon which plaintiff claims was never consummated, or that

such agreement was repudiated by John who has since secured title by adverse possession.

The judgment is affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1943.